# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CV 7290 | **DATE** | April 24, 2012 |
| **CASE TITLE** | *Chad & Amber Green v. Kubota Tractor Corp.* | | |

**DOCKET ENTRY TEXT**

The plaintiffs' motion to strike certain affirmative defenses [99-1] is granted in part and denied in part as follows: the motion to strike affirmative defenses 1, 4, 9, 10, 12, 13, 16, and 18 is granted and those affirmative defenses are stricken, while the motion to strike affirmative defenses 14, 15, 17, and 26 is denied. The defendant's motion to strike the plaintiffs' rebuttal expert witness [87-1] is denied. Status hearing set to April 24, 2012 is reset to May 24, 2012 at 11:00 a.m.

■ [ For further details see text below.]   Docketing to mail notices.

00:00

# STATEMENT

Plaintiffs Chad and Amber Green are the parents of Evan, who lost part of his foot and suffered other injuries after his grandfather, Elbert Simmons, backed a lawn tractor over Evan's foot. They have sued the tractor's manufacturer, Kubota Tractor Corp., for claims sounding in products liability and negligence.

Before the court are motions filed by each side to the dispute. The plaintiffs have filed a motion to strike 12 of the defendant's affirmative defenses. The defendant has moved to strike the plaintiffs' rebuttal expert witness. The court addresses each motion in turn.

**I.    Plaintiffs' Motion to Strike Affirmative Defenses [99-1]**

Kubota's answer to the Second Amended Complaint includes 27 affirmative defenses. The Greens move to strike 12 of those. Kubota does not contest the striking of 5 of those 12—affirmative defenses 1, 4, 9, 10, and 12—and so those affirmative defenses are stricken. What remains is the Greens' motion to strike affirmative defenses 13, 14, 15, 16, 17, 18, and 26.

An affirmative defense asserts that even if the allegations of the complaint are true, additional facts excuse the defendant from some or all liability. *See Tucker Law Firm LLC v. Alise*, No. 11 CV 1089, 2012 WL 252790, at *7 (N.D. Ill. Jan. 25, 2012). An affirmative defense is a pleading subject to Federal Rule of Civil Procedure 8(a), and therefore must include a short and plain statement of the defense. *See Heller Fin. Inc. v. Midwhey Powder* Co., 883 F.2d 1286, 1294 (7th Cir. 1989). Bare bone conclusory allegations are insufficient. *See Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. 11 CV 7494, 2012 WL 1108424, at *1 (N.D. Ill. Apr. 2, 2012).

Motions to strike an affirmative defense are generally disfavored because they can cause delay. *See Heller*, 883 F.2d at 1294. However, they can be useful to remove clutter, such as an affirmative defense that merely

raises matters already at issue. *See Allstate*, 2012 WL 1108424, at *1. The courts of this district employ the following three-part test when evaluating the sufficiency of an affirmative defense:

    (1)    the matter must be properly pleaded as an affirmative defense;

    (2)    the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and

    (3)    the matter must withstand a Rule 12(b)(6) challenge—in other words, if it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter must be stricken as legally insufficient.

*Renalds v. S.R.G. Restaurant Group*, 119 F. Supp. 2d 800, 802-03 (N.D. Ill. 2000).

    **A.**    **Timeliness**

Before addressing the merits of the motion to strike, the court first addresses Kubota's argument that the motion is untimely. Under Federal Rule of Civil Procedure 12(f)(2), a motion to strike affirmative defenses must be filed within 21 days after service of the pleading containing the affirmative defenses. *See* Fed. R. Civ. P. 12(f)(2). Kubota contends that the affirmative defenses the Greens have asked to be stricken were first served on December 29, 2009, in its answer to the original complaint. However, the original complaint has been supplanted by the Second Amended Complaint. Kubota filed its answer and affirmative defenses to the Second Amended Complaint on November 28, 2011, and the Greens filed the motion to strike 17 days later on December 15, 2011. The motion was therefore timely filed.

Nevertheless, Kubota contends that the Greens' motion is untimely because the affirmative defenses in Kubota's answer to the Second Amended Complaint are identical to the affirmative defenses in its answer to the original complaint, and the Greens never filed a motion to strike the original affirmative defenses. However, as explained in *United States v. B.R. MacKay & Sons, Inc.*, even when affirmative defenses in an answer to amended pleadings are identical to affirmative defenses in earlier pleadings, a motion to strike is timely if filed within 21 days of service of the answer to the amended pleading. *See United States v. B.R. MacKay & Sons, Inc.*, No. 85 CV 6925, 1986 WL 13717, at *1 (N.D. Ill. Nov. 28, 1986) ("The Amended Answer, not the original Answer, is the pleading which the motion attacks. Because the motion was filed within [the required number of] days of the Amended Answer, the motion is timely.").

Kubota also contends that the court should deny the motion to strike because the Greens did not seek to meet and confer with Kubota before filing the motion. In support, Kubota notes that the court previously denied motions in limine because the parties had not first met and conferred. *See* Minute Order [96-1] dated November 30, 2011. Although the court noted that the parties did not appear to have met and conferred, the court struck the motions in limine as premature because no trial date had been set, no briefing schedule for motions in limine had been set, and the court wanted to conserve the parties' and its own resources by not addressing motions in limine in a piecemeal fashion. Although the court encourages parties to attempt to resolve disputes among themselves, it declines to deny the motion to strike for failure to meet and confer.

    **B.**    **Affirmative Defenses 13 and 16 (State of the Art)**

| STATEMENT |
|---|

In affirmative defenses 13 and 16, Kubota alleges that the plaintiffs are barred from succeeding on their claims because the lawn tractor conformed with the generally recognized state of the art. The plaintiffs argue that those affirmative defenses should be stricken because conformance to the state of the art is not a proper defense.

Under Illinois law, conformance to the state of the art is not a defense to a strict liability action, and is not conclusive of non-negligence. *See Allstate*, 2012 WL 1108424, at *2 (applying Illinois law). Rather, it is simply a denial of the plaintiffs' allegations that the product was negligently manufactured. *Id*.

Accordingly, the defendant's evidence of the state of the art may be presented at trial, but its arguments about the state of the art do not constitute a proper affirmative defense, and the motion to strike is therefore granted. *Id.*

### C. Affirmative Defense 18 (Alternative Design)

The plaintiffs also move to strike affirmative defense 18, in which Kubota alleges that the plaintiffs are barred from succeeding on their claims because no safer, alternative design was available or feasible. In support of its affirmative defense, Kubota argues that under recent rulings by the Illinois Supreme Court in *Blue v. Environmental Eng'g, Inc.*, 828 N.E.2d 1128 (Ill. 2005) and *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249 (Ill. 2007), a plaintiff alleging strict liability bears the burden of proving a feasible alternative design. However, *Blue* and *Calles* merely acknowledge that evidence of a feasible alternative design is one means of establishing strict liability. *Blue*, 828 N.E.2d at 1142; *Calles*, 864 N.E.2d at 260. They do not hold that the existence of a feasible alternative design is a required element of a claim of strict liability. In fact, in *Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 345-46 (Ill. 2008), the Illinois Supreme Court explicitly rejected such a requirement.

Because a lack of evidence of a feasible alternative design would not defeat the Greens' strict liability claim, affirmative defense 18 is improper and the motion to strike it is granted.

### D. Affirmative Defense 14 (Compliance with Scientific Knowledge)
### Affirmative Defense 15 (Compliance with Standards and Regulations)
### Affirmative Defense 17 (Inherent Characteristic)
### Affirmative Defense 26 (Compliance with Standards and Regulations)

The plaintiffs move to strike these affirmative defenses as bare-boned and conclusory. The court acknowledges that the affirmative defenses themselves contain minimal facts. However, they need not be viewed in a vacuum. When viewed alongside the allegations of the Second Amended Complaint and the defendant's responses in its answer, the affirmative defenses put the plaintiffs on notice of the events on which they are based. *See Allstate*, 2012 WL 1108424, at *2 ("Although Electrolux does not provide any factual support within this defense regarding what conduct on the part of the Mohameds was negligent, . . . Electrolux's answer as a whole provides sufficient factual support . . ."). Moreover, discovery is completed except for some outstanding issues regarding expert discovery, and so the plaintiffs have had ample opportunity to explore the bases for the affirmative defenses.

Accordingly, the motion to dismiss affirmative defenses 14, 15, 17, and 26 is denied.

| STATEMENT |
|---|

## II. Defendant's Motion to Strike the Plaintiffs' Rebuttal Expert Witness [87-1]

Finally, the defendant seeks to strike the plaintiffs' rebuttal expert, Kevin Sevart. The plaintiffs disclosed Mr. Sevart as their rebuttal expert and produced the report containing his opinions on October 21, 2011, the deadline to which the parties stipulated for the disclosure of rebuttal expert witnesses.[1] The defendant contends that Mr. Sevart's opinions should be stricken because they are not true rebuttal opinions but, rather, merely cover the same subjects covered by the plaintiffs' originally disclosed experts. According to the defendants, because Mr. Sevart's opinions echo those of the plaintiffs' originally disclosed experts, those opinions should have been disclosed along with the other initial expert opinions, which were due March 1, 2011.

"The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *United States v. Grintjes*, 237 F.3d 876, 879 (7th Cir. 2001) (internal quotation marks and citation omitted). "Testimony offered *only* as additional support to an argument made in a case in chief, if not offered 'to contradict, impeach or defuse the impact of the evidence offered by an adverse party,' is improper on rebuttal. *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008) (emphasis added) (quoting *Grintjes*, 237 F.3d at 879). Under Rule 26(a)(2)((D)(ii), a rebuttal expert may be disclosed after the disclosure of the defense expert witnesses as long as the rebuttal expert "is intended solely to contradict or rebut evidence on the same subject matter identified by another party."

To begin, the court shall briefly review the opinions proffered by Mr. Sevart. A summary of his ten opinions are as follows:

1. The defendant's expert, Todd Bechtel, stated that he was unfamiliar with the term "No Mow In Reverse," or NMIR. Yet the term is commonly used by those familiar with the outdoor power equipment industry, and is used by various manufacturers, the OPEI Riding Mower Working Group, component manufacturers, and other industry professionals.

2. Mr. Bechtel stated that NMIR is a misnomer because it allows mowing in reverse. However, NMIR trains operators to disengage the blade motor before shifting to reverse, and even if the operator fails to do so, NMIR will bring blades to a stop with minimal reverse movement and little if any mowing.

3. Mr. Bechtel did not know that the primary purpose of an NMIR system is to protect children. Yet it is generally accepted that the purpose of NMIR is to prevent injuries to children.

4. Mr. Bechtel states that the Kubota Reverse Awareness system is not an NMIR. It is an operator-controlled override NMIR.

5. Another defense expert, Daniel Nielsen, stated that NMIR is a term and concept used only by one manufacturer, MTD. However, NMIR is also used on mowers by John Deere and Toro. In addition, the term is used by other manufacturers and the OPEI Riding Mower Working Group.

6. Mr. Nielsen states that NMIR causes increased wear and tear on blade brake systems.

> However, the user's manual instructs the operator to disengage power to the mower before backing up, and NMIR forces the operator to comply with this instruction.

7. Mr. Nielsen states that NMIR prevents the operator from using a common method of clearing a clogged chute, which is by operating the mower in reverse. That method of clearing a clog is not mentioned in the manual. In fact, the manual directs the operator to clear a clog by first stopping the vehicle, disengaging the mower drive, shutting off the engine, removing the key, and then cleaning the motor. Furthermore, operating the mower in reverse would force the clog further into the chute, not out of it.

8. Mr. Nielsen states that there is no evidence that NMIR tractors reduce blade contact with children. However, since the advent of NMIR, there have been few backover/blade-contact accidents. MTD knows of none in past 25 years involving its mowers with NMIR. NMIR is an effective tool in preventing child backover accidents, with and without blade contact.

9. Mr. Nielsen states that the MTD NMIR can be defeated, and Mr. Simmons would likely have defeated it. NMIR is not routinely defeated as evidenced by the fact that MTD continues to produce NMIR machines.

10. Mr. Nielsen and another defense expert witness, Juan Herrera, state that Evan Green would have still been injured even if tractor had NMIR because of the relatively short distance the mower was operated in reverse before the accident. After three years' use of the tractor, Mr. Simmons would have learned not to shift into reverse while the blades were engaged because, with NMIR, doing so would have stalled the engine every time.

The defendant contends that Mr. Sevart is not a rebuttal expert, and therefore was not timely disclosed, because his opinions "are not intended solely to contradict or rebut opinions of [Kubota]'s experts, but to buttress [the plaintiffs'] previously identified evidence on the issues they need to prove." Motion [87-1] at 5.

Mr. Sevart's opinions are specifically targeted at the expert evidence proffered by the defendants and, as detailed above, either contradict or rebut that evidence. For instance, Mr. Sevart's opinions contradict Mr. Bechtel's opinions that NMIR allows mowing in reverse, that NMIR was not primarily designed to protect children, as well as Mr. Nielsen's opinions that NMIR causes increased wear and tear on the blade brake system, that there is no evidence NMIR reduce blade contacts with children, and that NMIR systems are commonly defeated and Mr. Simmons would likely have defeated NMIR on his mower before the accident involving Evan.

The court acknowledges that Mr. Sevart's opinions touch upon subjects previously addressed by the plaintiffs' experts Christopher Ferrone and Dr. Jeffrey Ketchman, who generally opined that the tractor operated by Mr. Simmons should have been equipped with an NMIR system, and that an NMIR system would have prevented Evan's injuries. However, the mere fact that opinions offered in a rebuttal report touch upon the same subjects covered in an initial expert report does not require that the rebuttal report be stricken. For instance, in *City of Gary v. Paul Shafer*, No. 2:07 CV 56 PRC, 2009 WL 1370997 (N.D. Ind. May 13, 2009), the City of Gary sued the operator of an auto yard, alleging that the operator was responsible for the lead contamination found on his property. The plaintiff's expert timely filed a report, as did the defendants'.

The plaintiff's expert then filed a rebuttal report in which he contradicted opinions in the report of the defendants' expert that the lead contamination came from (1) runoff of a nearby municipal landfill, (2) illegal dumping on the property, and/or (3) spills that occurred before the auto yard began operations. The defendants argued that the purported rebuttal opinions should have been included in the expert's initial report on possible sources of lead contamination.

The court rejected the defendant's argument that an opinion is not a rebuttal opinion merely because it addresses the same subject matter addressed in the initial expert report: "Rule 26 does not automatically exclude evidence that an expert could have included in his original report as '[s]uch a rule would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing relevant material." *Id.* at *5 (citing *Crowley v. Chait*, 322 F. Supp. 2d 530, 551(D.N.J. 2004)). The court explained that the focus is not on the similarity between the initial and rebuttal reports, but rather "on whether the opinions expressed in a rebuttal report rebut the 'same subject matter' identified in the other party's expert report." *Shafer*, 2009 WL 1370997, at *5.

Nevertheless, the defendant argues that Mr. Severt's opinions should be stricken because they should have been disclosed as part of the plaintiffs' case in chief and, in fact, are similar to the opinions initially disclosed. In support, the defendant cites to *Sports Arena Mgt., Inc. v. K&K Ins. Group, Inc.*, No. 06 CV 6290, 2008 WL 4877452 (N.D. Ill. June 26, 2008). In *Sports Arena*, the plaintiffs sued their insurance broker for failing to procure coverage for damage due to permafrost that they had requested. *Id.* at *1. To succeed, the plaintiffs would be required to establish proximate cause by showing that the coverage they requested was available for purchase and would have applied to their loss. *Id.* During his deposition, the plaintiffs' original expert witness acknowledged that the defendants would argue that no insurer was willing to eliminate the exclusion for permafrost damage from their policies. *Id.* at *2. Later, the plaintiffs disclosed a rebuttal expert witness, who opined that insurers would have been willing to eliminate the permafrost exclusion. *Id.* at *1.

The court excluded the rebuttal expert witness as untimely disclosed. The court held that "plaintiffs knew defendant would attack proximate cause by arguing that the requested coverage was unavailable," and therefore should have offered expert testimony on the issue in its case in chief, not through a rebuttal expert witness. *Id.* at *2. Because the expert's opinion was "not rebuttal evidence, but evidence that supports an element of plaintiffs' tort claim," the court held that the plaintiffs should have disclosed the expert as part of their case in chief. *Id.* at *1.

The decision in *Sports Arena* focuses solely on whether the rebuttal opinion could have been offered earlier. It does not discuss the applicability of Rule 26(a)(2)(D)(ii) to the determination of whether expert evidence falls within the ambit of rebuttal evidence. Nor does it identify the opinion offered by the defense expert, or whether the rebuttal expert's opinion was specifically directed at the defense expert's opinion. Without these details, it is not possible to discern whether or not the proffered rebuttal opinion covered the "same subject matter" as the defense expert's opinion, the pertinent inquiry under Rule 26(a)(2)(D)(ii). Because the analysis in *Sports Arena* never focused on Rule 26(a)(2)(D)(ii)'s "same subject matter" requirements, the court declines to adopt its analysis that focuses solely on whether the opinion could have been offered as part of the plaintiff's case in chief. In addition, as discussed above, an inquiry that focuses solely on whether the rebuttal opinion could have been offered as part of the initial expert disclosures would open the doors to "vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing relevant material." *Shafer*, 2009 WL 1370997, at *5.

| STATEMENT |
|---|

Because Mr. Severt's opinions specifically rebut the opinions of the defendants' experts, they satisfy the "same subject matter" requirements of Rule 26(a)(2)(D)(ii) and are, therefore, properly characterized as rebuttal opinions.

**CONCLUSION**

For the reasons stated, the motion to strike affirmative defenses 1, 4, 9, 10, 12, 13, 16, and 18 is granted and those affirmative defenses are stricken, while the motion to strike affirmative defenses 14, 15, 17, and 26 is denied. The defendant's motion to strike the plaintiffs' rebuttal expert witness [87-1] is denied.

rs/cpb

1. On September 2, 2010, Magistrate Judge Brown set a October 14, 2011, deadline for the disclosure of rebuttal expert witnesses. On October 14, 2011, the parties filed a document entitled "Stipulation and Motion," in which they jointly asked the court to extend the deadline to October 21, 2011. Docket Entry #79. However, the parties never noticed the motion for presentment to the Magistrate Judge or this court. (As an aside, the request should have been filed and noticed as an agreed motion).

    As a result, the court never acted on the "Stipulation and Motion." But in the motion to strike, the defendant does not contend that the plaintiffs failed to meet the deadline for disclosing rebuttal experts, and so the court shall not address the issue further.